1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  ARTIN HAMBARSONPOUR,                          Case No. C25-1802-RSM

9                      Petitioner,               ORDER GRANTING PETITION FOR
                                                 WRIT OF HABEAS CORPUS UNDER 28
10          v.                                   U.S.C. § 2241

11  PAMELA BONDI, Attorney General of the
    United States, *et al.*,
12                     Respondents.

13

14                              **I.    INTRODUCTION**

15          This matter comes before the Court on Petitioner Artin Hambarsonpour's Petition for

16  Writ of Habeas Corpus Under 28 U.S.C. § 2241, Dkt. #1.  The Court has reviewed the petition,

17  the Government's Response, Dkt. #12, and Petitioner's Reply, Dkt. #20, and the remainder of

18  the record and finds that it can rule without the need for oral argument.  For the reasons below,

19  the Court will grant the petition.

20                              **II.    BACKGROUND**

21          Unless otherwise indicated, the following facts are taken from the verified petition, Dkt.

22  #1.  The parties generally agree to the core facts of this case but disagree on the legal application.

23          Petitioner was born in France in 1992.  His parents, Iranian refugees, were granted asylum

24  in France based on reasonable belief that they faced persecution in their native Iran due to their

Christian beliefs and Armenian ethnicity.  At 9 years-old, in April 2000, Petitioner came to the United States with his parents on a tourist visa, which they family overstayed.

In 2013, Petitioner pled *nolo contendere* to burglary and theft and was sentenced to 16 months imprisonment.  Dkt. #14, Ex. A.  Immigration and Customs Enforcement ("ICE") detained him upon his release in April 2014.  *Id*. at Ex. B.  The Department of Homeland Security ("DHS") issued a Notice to Appear that month, alleging Petitioner was removable pursuant to 8 U.S.C. § 1227(a)(1)(B).  *Id*. at Ex. C.  On May 1, 2014, an immigration judge ordered Petitioner removed to France.  Dkts. #13 at ¶ 5; #14, Ex. D.  On July 30, 2014, ICE released Petitioner on an order of supervision because France had declined to issue travel documents without proof of a French passport or identification.  Dkts. #13 at ¶ 6; Dkt. #14, Ex. E.

Petitioner had a series of California state convictions following his release, most recently receiving a 3-year prison sentence in 2024.  Dkt. #13 at ¶¶ 7-8.  However, it appears that Petitioner was released early, on May 13, 2025, and ICE revoked his order of supervised release and detained him the same day.  Since then, he has remained in detention at Northwest ICE Processing Center ("NWIPC").

Petitioner filed the instant habeas petition on September 17, 2025, requesting his immediate release and that the Court order Respondents that he cannot be removed to a third country.  Dkt. #1.  Petitioner also filed a Motion for Preliminary Injunction the same day.  Dkt. #3.  On October 6, the parties filed a Stipulated Motion for an expedited briefing schedule, agreeing to terminate the preliminary injunction motion and have the Government respond to the habeas petition instead, which the Court granted on October 9, 2025.  Dkts. #8 and #11.  The parties filed a Stipulation on October 7, where the Government agreed to not transfer Petitioner to a third country other than France while this case is pending.  Dkt. #10.  Per the parties'

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 - 2

stipulated schedule and the Court's Order granting the same, and the Government filed its Response to the petition on October 10, 2025. Dkt. #12.

On October 17, the parties filed a Stipulated Motion to push back Petitioner's Reply due date and the petition's noting date to October 31, 2025, due to anticipated travel documents and visa processing by France. Dkts. #16 and #17 (order granting). On October 30, due to continued communications with France, the parties again stipulated to continuing the Reply and noting date to November 14, 2025, "to see whether travel documents in fact will issue." Dkts. #18 and #19 (granting).

The Government's stance is that Petitioner's "immigration detention is not unconstitutionally indefinite" and that "ICE is actively working to effectuate his removal to France and believes that there is a substantial likelihood that a travel document will issue and Hambarsonpour will be removed to France in the reasonably foreseeable future." Dkt. #12 at 2.

In his Reply, filed on November 14, Petitioner contends that, while "ICE initially acted promptly in performing some work on a travel document request[,]" this process has been filled with silent gaps and continuing assurances of being completed "in the next few weeks," "soon," and "moving along shortly" with no end in sight. Dkt. #20 at 2-3. Petitioner continues to argue that his detention is in violation of his Fifth Amendment right to due process.

## III.    DISCUSSION

### A. Detention

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due

process of law[.]" U.S. Const. Amend. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process clause protects a[] [non-citizen] subject to a final order of deportation" *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001).

> In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. [*Id*. at] 678. Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat[.]" *Id*. As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id*. at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id*. at 701.

*Tran v. Scott*, No. 2:25-CV-01886-TMC-BAT, 2025 WL 2898638, at *4 (W.D. Wash. Oct. 12, 2025); *see also Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369, at *2 (W.D. Wash. Nov. 17, 2025) (quoting *Tran v. Scott*); *Kamyab v. Bondi*, No. C25-389RSL, 2025 WL 2917522, at *2 (W.D. Wash. Oct. 14, 2025) (quoting same).

Petitioner "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  However, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.  After a 6-month detention, there is "good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future, [and] the Government must respond with evidence sufficient to rebut that showing." *Id*.

Petitioner has been detained for more than 11 months since his final order of removal, so his detention is not "presumptively reasonable." *See Zadvydas*, 533 U.S. at 701. Dkts. #12 at 6, #20 at 1.

The Government recognizes that its burden to show that Petitioner's detainment is "reasonable" has grown under the *Zadvydas* "sliding scale." *See* Dkt #12 at 5. However, the Government argues that "the Supreme Court implicitly recognized that six months is the *earliest* point at which a noncitizens' detention could raise constitutional issues." *Id*. at 6 (emphasis in original). They argue that "[t]he facts here demonstrate that a travel document is significantly likely to issue in the reasonably foreseeable future" and "[t]he fact that Hambarsonpour does not yet have a specific date of anticipated removal does not make his detention indefinite." *Id*.

The Court disagrees. At the time of the Response, Petitioner had an interview scheduled with the French Consulate, and the Government "anticipated" travel documents soon after. *Id*. at 6. Since that date, October 17, ICE has reported that France would issue documents "in the next few weeks," that travel documents "will be issued very soon," and finally, almost a month later, that Petitioner's removal "should be moving along shortly." Dkt. #20 at 4 (citing exhibits). The Government has provided nothing beyond assertions that travel documents and removal will occur "soon." Petitioner's exhibits note several weeks and months of silence on his case, including the Government failing to follow-up until contacted by the French Embassy some three months after the Office of Enforcement and Removal Operations reached out and no action for almost two months prior to his October interview. *Id*. at 2-3. Through the declaration of an ICE officer, the Government asserts that "ICE has received assurances from the French Consulate that a travel document will be issued for Petitioner[,]" Dkt. #13 at ¶ 16, but provides no evidence

or "substantive indication regarding how or when it expects to obtain the necessary travel document from the [French] government. *See Kamyab*, 2025 WL 2917522, at *5 (quoting *Nguyen*, 2025 WL 2419288, at *16-17. At most, the Government "merely asserts that it has followed up on its request for travel documents from [France] and done all it can[,]" *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006). Petitioner's (a) years of supervised release and prolonged months of detention, that (c) no changes have occurred since the alleged October interview, and (d) the three Stipulations to delay these proceedings because the Government needs just a bit more time "to see whether travel documents in fact will issue" all weigh against the Government's assertions, leading this Court to conclude that the Government has shown nothing more than "at least some possibility that [France] will accept Petitioner at some point." *Kamyab* at *5 (quoting *Nguyen* at *16-17). In sum, the Government's lack of information, especially since its last filing, leaves this Court with nothing to go on weighed against a violation of Petitioner's constitutional rights. Accordingly, the Court agrees with Petitioner that his removal is not significantly likely in the reasonably foreseeable future and will grant the petition.

**B. Third-Country Removal**

Petitioner also requests that the Court order that the Government cannot remove him to a third country without notice and ability to respond and contest the removal, nor may the Government "seek to remove Petitioner to a third country under their punitive banishment policy and practices." Dkt. #1 at 15-16. The Government contends that "ICE is not planning a third country removal, [so] this Court should not assert jurisdiction over Hambarsonpour's premature request for injunctive relief preventing third country removal." Dkt. #12 at 6-7.

A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his

claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009-11 (W.D. Wash. 2019). In *Nguyen*, this Court held that Aden "flow[s] directly from binding Ninth Circuit precedent" and determined that ICE's current third-country removal policy "contravenes Ninth circuit law." 2025 WL 2419288, at *18-19. Other "[c]ourts in this district have recently found that due process challenges to ICE's third-country removal policy are likely to succeed on the merits." *Abubaka*, 2025 WL 3204369, at *6 (listing cases).

The *Nguyen* court found that the Government's voluntary promise to not remove a petitioner to a third country unless the pending travel document request was denied was "insufficient to rebut Petitioner's showing of irreparable harm" and preliminary injunction request. 2025 WL 2419288, at *27. From this holding, the *Abubaka* court held that the Government's "voluntary promise not to attempt third country removal 'unless and until [the requested country] denies the pending travel document request' is insufficient to protect petitioner's statutory and due process rights, even when promising "24 hours advance notice." 2025 WL 3204369, at *6 (quoting *Nguyen* at *27). This Court agrees with the holding in *Nguyen* and *Abubaka* and will grant Petitioner's request for an order enjoining Respondents from removing him to a third country without providing "constitutionally and statutorily compliant notice and an opportunity to respond and contest that removal if he has a fear of persecution or torture in that country in reopened removal proceedings." *See* Dkt. #1 at 14.

Petitioner also argues that third country removal is "more than a publicity stunt," "punitive," and therefore unconstitutional under *Wong Wing v. United States*, 163 U.S. 228 (1896). *Id*. at 11-12, 15. Considering this argument and the Govenrment's contention that it was not ripe, the *Nguyen* court, taking judicial notice of "statements made by government official, both on social media and to the press, acknowledging that deportees to third countries are being imprisoned and expressing intent to continue that practice[,]" found that:

> [T]hese statements . . . do offer evidence that third country deportation is occurring as a punishment. *See, e.g.*, Dkt. #25 at 13 (official video of President Donald J. Trump stating "[I]f illegal aliens choose to remain in America, they're remaining illegally and they will face severe consequences. Illegal aliens who stay in America face punishments, including significant jail time, enormous financial penalties, confiscation of all property, garnishment of all wages, imprisonment and incarceration, and sudden deportation in a place and manner solely of our discretion."); *see also id.* (statement by President Donald J. Trump that immigrants would be detained at Guantanamo Bay prison because "it's a tough place to get out" and "we don't want them coming back.").

*Abubaka*, 2025 WL 3204369, at *8 (quoting *Nguyen*, 2025 WL 2419288, at *24). Despite the Government's arguments, courts have agreed that, "by the time they are ripe by the government's argument, it will be too late for the individuals to meaningfully challenge the removal." *Louangmility v. Noem*, No. 25-CV-2502-JES-MSB, 2025 WL, at *4 (S.D. Cal. Oct. 9, 2025) (quoting petition citing to *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 389 (D. Mass. 2025)); *see also Nguyen*, 2025 WL 2419288, at *27.

The Court finds no reason to deviate from the above and agrees with the *Abubaka* court's holding "that the government's practice of third-country removal paired with imprisonment [or harm] is intended to be punitive and thus violates due process under *Wong Wing*, 163 U.S. 228 at 246-38 (1896), and *Zadvydas*, 533 U.S. 678 at 693-4 (2001)." 2025 WL 3204369, at *8. Accordingly, the Court will grant Petitioner's request on the issue of third-country removals.

## IV.    CONCLUSION

Having reviewed the instant Petition, responsive briefings, declarations and attached exhibits, and the remainder of the docket, the Court hereby finds and ORDERS that Petitioner Hambarsonpour's Petition for Writ of Habeas Corpus, Dkt. #1, is GRANTED. The Court ORDERS that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(1) Immediately release Petitioner Hambarsonpour from custody;

(2) Are ENJOINED from removing Petitioner to a third country without providing Petitioner with notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings;

(3) Are ENJOINED from removing Petitioner to a country other than designated (*i.e.*, France) pursuant to Respondents' unconstitutionally punitive third-country removal program.  Thus, the Court ORDERS that Respondents may not remove Petitioner to a third country where he is likely to face imprisonment or harm.

DATED this 21st day of November, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE